DAYTON WOMEN'S HEALTH CENTER et al., Appellees,

v.

ENIX et al., Appellants.

[Cite as *Dayton Women's Health Ctr. v. Enix* (1991), 68 Ohio App.3d 579.]

Court of Appeals of Ohio,
Montgomery County.

Nos. 11545, 11637 and 11685.

Decided Aug. 27, 1991.

582

*David C. Greer* and *John F. Haviland,* for appellees.

*Thomas E. Grossman, Robert Huffman* and *James J. Condit,* for appellants.

*Chris R. VanSchaik* and *Victor T. Whisman,* Assistant Prosecuting Attorneys.

*Per Curiam.*

This matter, which comes before us for a second time, is a consolidation of three appeals: case Nos. 11545, 11637, and 11685. Before addressing the specific issues in each individual case, we will briefly restate the procedural and factual history of the entire matter.

## I

### Procedural and Factual Posture

In October 1986, plaintiffs-appellees Dayton Women's Health Center, Inc., K.W. Davis, M.D., and Robert Skipton, M.D. (hereinafter collectively referred to as "DWHC") filed a complaint against defendants-appellants David Enix, Jim Mehaffie, David Mehaffie, Kym Mehaffie, Douglas Sapp, H.F. Perkins, and other unidentified persons. DWHC alleged that the defendants had engaged in tortious activity that interfered with the delivery of medical services at the health center. The prayer of the complaint was for damages and injunctive relief. The complaint also sought to have the case certified as a defendant class action.

In January 1987, the trial court certified the case as a defendant class action and issued a preliminary injunction. The defendant class was defined as "all individuals protesting the activities conducted at the [health center], who have been personally served * * *" with the trial court's entry.

Despite the preliminary injunction, the defendants continued to engage in activities that violated the letter and spirit of the court's order. Accordingly, in response to the defendants' conduct, the trial court supplemented and

modified its original injunctive order. Finally, in July 1987, the trial court issued a permanent injunction enjoining the defendant class from:

1. Blocking or interfering with the access or egress of any individual going to or from the Dayton Women's Health Center;

2. Blocking or interfering with the driveway of the Dayton Women's Health Center;

3. Blocking or interfering with the flow of traffic on, from or to South Dixie Drive;

4. Using any sign larger than four feet in any dimension, including signs resembling traffic safety signs, *i.e.*, stop signs, or using any sign urging motorists to honk;

5. Speaking, chanting, yelling or verbally communicating in any manner designed, intended or having the effect of reaching the staff or patients or volunteers inside the Dayton Women's Health Center;

6. Trespassing on the property of the Dayton Women's Health Center;

7. Verbal communications, either in person or by telephone, with employees, staff or volunteers of Dayton Women's Health Center unless such communications are with the consent of such employees, staff or volunteers;

8. Picketing in any form including parking, parading or demonstrating at or within the viewing distance of the homes of patients, employees, staff or volunteers of the Dayton Women's Health Center or of physicians performing services at the Dayton Women's Health Center;

9. Picketing in any form including parking, parading or demonstrating at or within the viewing distance of the offices of physicians performing services at the Dayton Women's Health Center in groups of more than five individuals;

10. Picketing in any form including parking, parading or demonstrating on the west side of South Dixie Drive within viewing of the Dayton Women's Health Center;

11. Picketing in any form including parking, parading, or demonstrating within the viewing distance of the Dayton Women's Health Center at any location other than the sidewalk bordering the east side of Dixie Drive in front of the facility;

12. Picketing in any form including parking, parading, or demonstrating within the viewing distance of the Dayton Women's Health Center in groups of more than ten individuals.

· The defendants appealed from the trial court's order. On December 5, 1988, we rendered an opinion in which we affirmed virtually all of the court's permanent injunction and determined that the defendants waived their right

to challenge the class certification order by failure to file a timely appeal. However, we did strike from the injunction paragraphs numbered 7 and 8 concerning verbal communications with health center employees and residential picketing, respectively. We also modified paragraph 5 dealing with the acceptable noise level of demonstrations carried on at the clinic. The defendants filed a motion for reconsideration, which we denied on January 6, 1989.

A notice of appeal was subsequently filed, along with a motion to certify the case based upon five alleged conflicts with other appellate districts. We found that we were in conflict on only one issue, that being the appealability of the class certification order. Accordingly, we ordered that the record in the case be certified to the Supreme Court for review and determination.

In their brief to the Supreme Court, the defendants argued several propositions of law related to the "range and extent of the permanent injunction." However, the court chose only to address the sole question certified to it. On June 20, 1990, the court affirmed our decision and held that an order of a trial court pursuant to Civ.R. 23(C) is a final appealable order from which a party must appeal within thirty days. *Dayton Women's Health Center v. Enix* (1990), 52 Ohio St.3d 67, 555 N.E.2d 956, rehearing denied (1990), 53 Ohio St.3d 706, 558 N.E.2d 61, certiorari denied *sub nom. Enix v. Dayton Women's Health Center* (1991), 498 U.S. ——, 111 S.Ct. 753, 112 L.Ed.2d 773.

While the appeal from our decision of December 5, 1988 was pending, contempt charges were brought against the defendants in each of the three appeals now before us. The facts of each case are as follows:

### A. *Case No. 11545*

In this case, over two hundred contempt citations were filed against eighteen defendants for allegedly violating various provisions of the permanent injunction. From February 9 to February 15, 1989, the citations were tried. On March 14, 1989, the trial court found that ten of the eighteen defendants were in contempt on seventeen of the citations. The remaining citations were dismissed for lack of sufficient evidence to establish that actual violations of the order had occurred. The defendants who were found to be in contempt were fined $500 for each violation of the order. The fines were then suspended upon the condition that the defendants "comply henceforth with the Court's orders."

In addition to addressing the specific contempt charges in its judgment, the trial court renewed its restriction on residential picketing. The order prohibited "[p]icketing in any form including parking, parading or demonstrating which is *limited to* the homes of patients, employees, staff or volunteers of

the Dayton Women's Health Center of the physicians performing services at the Dayton Women's Health Center." (Emphasis added.) The trial court also rejected the defendants' claim that the vast majority of the contempt citations were frivolous.

### B. *Case No. 11637*

In this case, a contempt citation was filed against defendant Tammy Silvey, who is also a defendant in case No. 11545, for allegedly violating the provision in the permanent injunction which limits picketing to a small strip of sidewalk on the east side of South Dixie Drive in front of the health center. On April 25, 1989, while picketing at the clinic, Silvey allegedly left the sidewalk, approached an automobile turning into the clinic's driveway, and followed the car about thirty-five or forty feet onto another building's parking lot. After a hearing on the merits, the trial court found that Silvey had "engaged in picketing at locations other than the area designated by [the] * * * permanent injunction," and that such conduct was in direct violation of the order. Silvey was fined $500 for the April 1989 violation of the permanent injunction, and was also ordered to pay $500 in fines previously imposed and suspended by the trial court.

### C. *Case No. 11685*

In this appeal, contempt charges were brought against twenty-two defendants for trespassing at the Dayton Women's Health Center on March 24, 1989. These defendants were not involved in the original class action and were alleged to have been unaware of the permanent injunction. However, all twenty-two defendants received a copy of the court's order when they arrived at the clinic, and they were also given oral notice by sheriff's deputies that they were trespassing on the health center's property in violation of the court order.

The defendants were given approximately two hours to read the order and comply with its requirements. They refused to obey. As a result, the defendants were arrested and charged with criminal trespass. They were then taken to Kettering Municipal Court where they entered pleas of *no contest* and were convicted and sentenced accordingly.

Subsequent to the criminal trespass proceedings in Kettering, a hearing was held in Montgomery County Common Pleas Court on the contempt charges. Based upon the evidence presented, the trial court found that the defendants had violated its order by trespassing on the clinic's property. The court then imposed a $1,000 fine on each defendant, $500 of which was suspended "on the condition that each defendant comply henceforth" with the provisions of the permanent injunction.

## II

### Issues Presented for Review

In each of the cases now before us several issues have been presented for review. We will address each case individually.

### A. *Case No. 11545*

In this case the defendants have raised fifty-three assignments of error. Many of the arguments pertain to similar issues and will therefore be consolidated. Other arguments will be addressed individually.

### 1. *Class Certification*

In assignments of error one through four, six through seven, sixteen through twenty-seven, and twenty-eight through thirty-three, the defendants (1) challenge the trial court's order certifying this matter as a class action, and (2) argue that they cannot be bound by an injunction limiting or prohibiting unlawful activity by a class of which they were not a member when the injunction issued.

■ As to the first argument, we held in our decision of December 5, 1988, that the failure of these defendants to raise the issue of certification within thirty days of the trial court's order waived their right to challenge the court's order of certification. That judgment has been affirmed on appeal and is now the "law of the case." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410. *Weaver v. Motorists Mut. Ins. Co.* (1990), 68 Ohio App.3d 547, 589 N.E.2d 101. The certification may not now be questioned.

■ Appellants' second argument is without merit. The court acted on its inherent power to preserve the effect of its orders and to protect the rights determined therein from intentional interference by other persons. *United States v. Hall* (C.A.5, 1962), 472 F.2d 261. This power extends to persons who were not before the court when it made its prior order but who, after notice of the order, act in violation of its terms and restrictions. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 556 N.E.2d 157. The court has the power to punish such acts as contempt. *Id.* Appellants' reliance on *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215, is misplaced: the court's order does not impose liability on members of a class or by reason of mere association. Any liability arises after individual notice and violation of the order. Lastly, the order is not "content" based and thus does not violate the First Amendment precepts of *Carey v. Brown* (1980), 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263, and *Police Dept. of Chicago v. Mosley* (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212.

Based upon the foregoing, the defendants' first through fourth, sixth and seventh, sixteenth through twenty-seventh, and twenty-eighth through thirty-third assignments of error are overruled.

### 2. *Provisions of Permanent Injunction*

■ In six of their assignments of error, specifically, assignments numbered nine through ten and twelve through fifteen, the defendants assert that the trial court's permanent injunction, as drafted, is vague, overbroad, and improper. Essentially, the defendants contend that the prohibitions contained within the injunction are not reasonable time, place, and manner restrictions. We disagree. We have already determined that, with the exception of the trial court's complete ban on residential picketing and verbal communications with health center personnel, the trial court's order contained content-neutral time, place, and manner restrictions. Because the Ohio Supreme Court denied a motion to certify as to this issue, our prior determination remains the "law of the case" and will not be reexamined. *Nolan v. Nolan, supra; Weaver v. Motorists Mut. Ins. Co., supra.*

Accordingly, the defendants' ninth and tenth and twelfth through fifteenth assignments of error are overruled.

### 3. *Residential Picketing*

■ In their eleventh assignment of error, the defendants contend that the trial court erred by renewing its restriction on residential picketing, at paragraph eight of its order. That restriction is limited to picketing focused on specific residences. It does not ban picketing throughout residential areas. It does not prohibit residential anti-abortion picketing while permitting residential picketing having other aims. Therefore, the order is content-neutral and sufficiently narrow to protect the interests of those who are presumptively unwilling to receive this form of speech and have the right not to, while leaving open ample alternative channels of communication. It is not in violation of the rights of these defendants protected by the First Amendment. See *Perry Edn. Assn. v. Perry Local Educators' Assn.* (1983), 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794; *Frisby v. Schultz* (1988), 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420.

Accordingly, defendants' eleventh assignment of error is overruled.

### 4. *Equal Protection*

■ In assignments of error five and eight, the defendants assert that the permanent injunction violates the Equal Protection Clause of the Fourteenth Amendment because the "only type of picketer enjoined is one who protests

what [the health center] does." Again, we disagree, and for the same reasons enunciated in Sections II A 1 and II A 2 of this opinion.

In our opinion dated December 5, 1988, we addressed the equal protection argument and held that the permanent injunction was not constitutionally infirm for the same reason presented here. Because the Ohio Supreme Court decided not to address this issue, our holding has become the "law of the case." *Nolan v. Nolan, supra; Weaver v. Motorists Mut. Ins. Co., supra.*

The defendants' fifth and eighth assignments of error are overruled.

### 5. *Contempt Citations Frivolous*

Defendants argue in assignments thirty-four through forty-seven that the vast majority of contempt citations filed against them were frivolous and that the trial court, instead, should have imposed sanctions against DWHC for bringing such actions. We disagree.

Our review of the record indicates that although many of the contempt charges filed by DWHC were for less than "gross" violations of the injunction, the defendants have not shown that those charges were baseless. Based upon our review of the record, we cannot conclude that it was an abuse of discretion to impose sanctions on the defendants. If anything, it appears to us that the trial court has handled this case fairly and attentively in light of the sheer magnitude of documents and testimony that it has had to analyze and rule upon. Defendants have failed to portray error.

Based upon the foregoing, defendants' thirty-fourth through forty-seventh assignments of error are overruled.

### 6. *Contempt Charges Relating to Defendant Tammy Silvey*

Assignments of error forty-eight through fifty-three deal exclusively with defendant Tammy Silvey. In these assignments, the defendants essentially contend that: (1) the trial court erred in finding Silvey in contempt of its order when the provisions of that order were invalid and when Silvey had not been served with a copy of the order; (2) the trial court erred in finding Silvey in contempt when it was shown that DWHC proceeded with "unclean hands"; and (3) Silvey should not have been found in contempt for activities at the health center on April 25, 1989.

With regard to the arguments concerning the validity of the injunction and DWHC's "unclean hands," we have already determined, in our analysis of assignments numbered nine through fifteen and thirty-four through forty-seven, that the provisions of the underlying order are not invalid and that DWHC has not violated "good faith." Accordingly, defendants' arguments on these points are without merit.

Likewise, defendants' argument regarding Silvey's notice of the court's order is meritless. In her brief in case No. 11637, Silvey notes that the parties *stipulated* before the trial court that she had received notice of the injunctive order.

██ Finally, with regard to the defendants' argument that Silvey did not violate the permanent injunction on April 25, 1989, our review of the record indicates that Silvey trespassed on property adjoining the health center. Clearly, this is a violation of the injunctive order, and it was not an abuse of discretion for the trial court to find Silvey in contempt for such activities.

The defendants' forty-eighth through fifty-third assignments of error are overruled.

### B. *Case No. 11637*

This case involves only one defendant, Tammy Silvey, and only one issue, whether the trial court erred in finding Silvey in contempt for her activities at the health center on April 25, 1989.

Essentially, Silvey contends that because her actions amounted only to a technical infraction of the court's order, and because she did not actually intend to violate the order, it was error for the trial court to find her in contempt. We do not find these arguments persuasive.

As noted in Section II A 6 of this opinion, the trial court found that Silvey deliberately left the area where picketing was permitted and trespassed upon an adjoining landowner's parking lot. Our review of the trial transcript indicates that the court's decision was supported by competent and credible evidence. Therefore, in light of the fact that Silvey's actions were violative of the permanent injunction, it was not error for the trial court to hold her in contempt and fine her accordingly.

Silvey's sole assignment of error is overruled.

### C. *Case No. 11685*

The twenty-two defendants in this case raise five assignments of error.

#### 1. *Double Jeopardy*

In their first assignment, the defendants contend that the trial court violated the Double Jeopardy Clause of the United States Constitution by finding them in contempt for trespassing at the health center after they had been charged and convicted in Kettering Municipal Court, under a criminal trespass statute, for the same activities. We agree.

██ It is fundamental that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb." Fifth Amendment to the

United States Constitution. This clause has been interpreted to mean that the state cannot bring successive prosecutions against a defendant under two criminal statutes or impose successive criminal punishments for the same act or transaction. *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. A subsequent prosecution is barred if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted and convicted. *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548.

In the case before us the defendants were charged and convicted in Kettering, Ohio, under its criminal trespass ordinance for activities carried out at DWHC on March 24, 1989. Subsequent to those proceedings, contempt charges alleging a violation of the trial court's permanent injunction based on and for the same acts were filed in the court of common pleas against those same persons.

After a hearing on the merits, the trial court found that the defendants had trespassed upon the health center's property and were in contempt of its injunctive order. The court fined each of the defendants $1,000, but suspended $500 of the fine on the condition that the defendants comply with the order in the future. The court characterized the remaining $500 fine as a civil penalty and dismissed defense counsel's argument that the court was actually imposing a successive criminal penalty upon the defendants in violation of their double jeopardy rights.

 "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom v. Illinois* (1968), 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522, 528. Fundamental constitutional safeguards required in criminal trials are also required in criminal contempt proceedings. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 15 O.O.3d 221, 400 N.E.2d 386. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610. Therefore, double jeopardy protections apply to any contempt which is determined to be criminal.

 Whether a contempt is civil or criminal depends largely on the character of the sanction imposed. If it is for civil contempt the punishment is remedial and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. *Gompers v. Bucks Stove & Range Co.* (1911), 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806. Sanctions for criminal contempt thus share three traditional characteristics: (1) the sanction is a punishment; (2) the sanction is imposed for conduct that has occurred in the past; and (3) the purpose of the

sanction is to uphold the authority of the court. Civil contempt produces a remedial sanction, which is one intended to coerce the termination of specific misconduct which constitutes a continuing contempt of court.[1]

"If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.'

" * * *

"If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks v. Feiock* (1988), 485 U.S. 624, 632, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721, 731, citing *Gompers v. Bucks Stove, supra,* 221 U.S. at 442, 31 S.Ct. at 498, 55 L.Ed. at 806.

The $500 fine imposed on these appellants constituted a punishment for past conduct and was imposed for the purpose of upholding the authority of the court. The fine was payable to the court. The appellants could not avoid paying the fine by performing an affirmative act. The sanction was, therefore, punitive. It could not be imposed for the same conduct which supported appellants' prior convictions for criminal trespass, for to do so placed appellants in jeopardy twice. *Grady v. Corbin,* supra.

We conclude that an essential element of the charge of contempt brought against appellants required proof of conduct which constituted the offense of criminal trespass for which they had previously been prosecuted and convicted. The portion of their punishment which constitutes a criminal penalty is, therefore, barred by double jeopardy. The portion of the fine in the amount of $500 ordered suspended was, in contrast, a civil penalty, not because it was suspended but because it was imposed to coerce certain behavior and can be avoided by appellants by compliance with the court's order. It was purely "remedial" and thus did not put appellants in jeopardy of criminal proceedings or criminal punishment twice.

Based on the foregoing, the appellant's first assignment of error is sustained.

---

1. See Martineau, Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt (1981), 50 Cin.L.Rev. 677, 693–694.

## 2. *Personal Jurisdiction/Class Certification*

In their second and third assignments of error, the defendants essentially argue that the trial court erred by improperly including them in the defendant class and finding them in contempt of the permanent injunction. These arguments are not persuasive.

We conclude that, in looking at the peculiar facts of this appeal, class certification is not at issue. The evidence indicates that after the defendants' arrival at the health center each was served with a copy of the court's order and was informed by the deputies that his or her actions were in violation of that order. Had it not been a violation of the Double Jeopardy Clause to do so, the trial court could have found each defendant in contempt of its order for his or her individual acts.

The defendants' second and third assignments of error are overruled.

## 3. *Clarity of Order*

Defendants argue in their fourth assignment that the trial court erred in enforcing an order that was "vague, overbroad, and beyond the comprehension of persons of ordinary intelligence." Based upon the record before us, we do not agree.

There is ample evidence in the record to indicate that all of the defendants were served with the order and that the deputies made them aware of its provisions. The defendants' purported inability to understand the order is not persuasive.

Accordingly, the defendants' fourth assignment of error is overruled.

## 4. *Recusal*

In their final assignment, the defendants contend that the trial court erred in not recusing itself after engaging in the prosecutorial act of instituting the contempt charges against them.

First of all, there is no evidence in the record supporting the defendants' contention that the trial court acted as both prosecutor and trier of fact. It was the county prosecutor's office, not the trial judge, that acted as advocate.

Second, the defendants have not shown why it was error for the trial court to refuse to recuse itself so that it could enforce its own order. Although there is evidence in the record to indicate that the trial judge reviewed tapes of the defendants' conduct and was involved in meetings with the prosecutors and deputies prior to trial, there is no showing that the trial judge was unable to maintain his objectivity when the contempt charges were brought before him on the merits.

Based upon the foregoing, the defendants' fifth assignment of error is overruled.

## III

### Conclusion

#### A. *Case No. 11545*

All of their assignments of error having overruled, the judgment of the trial court dated March 14, 1989, finding Tammy Silvey, Corina Sumner, Mindy Berry, David Mehaffie, Kym Mehaffie, James Mehaffie, Dawn Thomas, Bruce Moore, Lori Delane, and Mary Gigandet in contempt, will be affirmed.

#### B. *Case No. 11637*

Tammy Silvey's sole assignment of error having been overruled, the judgment of the trial court finding her in contempt and assessing fines will be affirmed.

#### C. *Case No. 11685*

Their first assignment of error having been sustained, the judgment of the trial court finding Virginia A. Bachelier, John V. Bertrand, Elaine V. Deaton, Kathleen M. Dewey, Thomas P. Drake, Geraldine M. Dzikowski, Margaret J. Geis, Robert P. Geis, Kevin S. Gordon, Mark E. Hayden, Constance M. Hurier, Mathew Keck, David B. Leach, Francis Lieuwen, Raymond E. Loebker, James M. Martin, John D. Parker, Estelle Quallen, Robert P. Rust, Marcella L. Tilford, Lewis H. Urling, and Paul F. Weckenbrock in contempt, and assessing fines against them, will be ordered modified, and that portion of the penalty in the form of a fine in the amount of $500 not suspended upon further compliance is vacated. The portion of the order concerning the suspended fine in the amount of $500 is affirmed and continued.

*Judgment accordingly.*

FAIN, P.J., WOLFF and GRADY, JJ., concur.