JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michelle Earley ("appellant"), appeals the decision of the Cuyahoga County Common Pleas Court that convicted and sentenced her for intimidation following a jury trial. For the reasons that follow, we hereby dismiss and vacate.
 {¶ 2} On December 19, 2000, the Cuyahoga County Grand Jury returned an indictment charging appellant with intimidation in violation of R.C. 2921.04 and retaliation in violation of R.C. 2921.05. The case proceeded to a jury trial on October 18, 2001, wherein the jury found appellant guilty of intimidation. The charge of retaliation was dismissed by the State.
 {¶ 3} On March 5, 2002, the trial court sentenced appellant to three-years community control sanctions following the imposition of a six-month term of imprisonment. Subsequently, appellant violated her probation and on June 7, 2002, the trial court sentenced appellant to two years imprisonment.
 {¶ 4} The appellant submits five assignments of error for our review.
 {¶ 5} I. "The trial court erred in denying appellant's motion for acquittal when the state failed to present sufficient evidence on the charge of intimidation in violation of R.C. 2921.04."
 {¶ 6} II. "The state denied the appellant her right of due process when it erroneously elicited inflammatory and prejudicial evidence of her prior convictions."
 {¶ 7} III. "The misconduct of the prosecutor violated appellant's rights to a fair trial guaranteed by the Due Process provisions of Article I, Section 16 of the Ohio Constitution, and theFourteenth Amendment to the United States Constitution."
 {¶ 8} IV. "The court erred and abused its discretion in revoking appellant's probation and sentencing her to the penitentiary."
 {¶ 9} V. "The appellant's intimidation conviction is against the manifest weight of the evidence."
 {¶ 10} We reach only the first assignment of error because it is dispositive of this case. In her first assignment of error the appellant argues that the State failed to present evidence of the underlying crime as an essential element of the intimidation charge. We agree.
 {¶ 11} With regard to procedure, we note that Crim.R. 29 provides:
 {¶ 12} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 13} A Crim.R. 29 motion for judgment of acquittal is properly denied where the evidence is such that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
 {¶ 14} As to appellant's claim of insufficient evidence, we note that when reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001),90 Ohio St.3d 460. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witness in person. State v. Antill (1964),176 Ohio St. 61; State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 15} In the instant case, the appellant was convicted of one count of intimidation pursuant to R.C. 2921.04,[1] which provides as follows:
 {¶ 16} "(A) No person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
 {¶ 17} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 18} At trial, the victim, Ann Marie McKenzie ("McKenzie"), testified that she worked as a bond information clerk for the Cuyahoga County Clerk of Court's office, Criminal Division, where she prepared criminal bonds. McKenzie stated that on October 25, 2000, after preparing a bond for Ralph Watts, a bail bondsman whom she was familiar with, she requested payment of the $41 bond fee. McKenzie stated that Watts then told her to "Shut my * * * mouth and I ought to learn my * * * job." Upset, McKenzie reported the incident to her supervisor and then to the Sheriff's Department. McKenzie further testified that the matter was assigned to the special docket where the trial judge found that Watts verbally harassed her. As a result, Watts was suspended for 30 days from writing bonds in Cuyahoga County.
 {¶ 19} McKenzie testified that on November 27, 2000, she was returning to work from lunch when a woman, later identified as appellant, approached her and stated that she needed to speak with her. McKenzie later remembered seeing appellant with Watts at the bond window on a prior occasion. McKenzie testified that appellant stepped into the nearby women's restroom, grabbed McKenzie's arm, and pulled her into the restroom also. Appellant then grabbed McKenzie's hand, began squeezing and said "Hi, I'm Michelle." Appellant did not let go of McKenzie's hand, forcing McKenzie to pull her hand away from Appellant's grip. During this time, McKenzie stated that appellant began yelling at her, saying that she was a friend of Watts and that whatever suit she had filed against him had better be dropped. McKenzie testified that appellant said "she would do whatever it took to protect Ralph," and that she would fight for him.
 {¶ 20} McKenzie reported the incident to her supervisor and the Sheriff's Department. McKenzie stated she was afraid because she felt Watts had sent the appellant after her. McKenzie stated she felt the appellant did not want her to testify against Watts and that she felt threatened and intimidated by the appellant's behavior. She testified that it took three minutes to pull her hand away from the appellant. She stated that appellant hurt her by squeezing her hand and that it made her feel that appellant was warning her with her strength and ability to cause her physical harm.
 {¶ 21} Another bail bondsman, Ricky Owens, testified he believed appellant solicited persons to use Watts as a bail bondsman and that Watts then paid appellant for bringing him business. Owens testified that on November 27, 2000, he witnessed the appellant leading or pulling McKenzie into the restroom. Owens could see into the restroom, which did not have an outer door, and heard the appellant speaking loudly to McKenzie and waving her hands. McKenzie was standing with her back to Owens while in the restroom. Owens witnessed McKenzie walk away, her face red, saying to Owens "I don't know what is going on. Who is this person?" Concerned, Owens followed McKenzie into the clerk's office where she told him, and two other persons, about the incident with the appellant. Owens stated that he did not witness the appellant squeezing McKenzie's hand from his position outside the restroom.
 {¶ 22} The State also presented the testimony of Sheriff Deputies Daniel Cipollone and Linda Graham who testified that while taking McKenzie's statement, McKenzie was crying, red-faced, shaking and had a look of terror.
 {¶ 23} Sheriff Deputy David Schilling testified that he interviewed the appellant and that in her statement, the appellant stated "I seen Ann and I went into the bathroom and she was telling me what happened, and I told her about slander because I didn't want Ralph to get into trouble, because of me being around, and my cases, and that was it."
 {¶ 24} The appellant testified in her own defense and denied ever working for Watts. She stated that she asked to speak with McKenzie, whom she did not know, about Watts because she thought it might involve her because she and Watts were associates. Watts has informed the appellant about the incident between he and McKenzie. Appellant then stated that she asked McKenzie to speak with her in the restroom. Appellant admitted shaking McKenzie's hand, introducing herself, and informing McKenzie that Watts could sue her for slander.
 {¶ 25} We note that under the sentencing procedures enacted as part of Senate Bill 2, an appellate court cannot reduce, modify or vacate the defendant's sentence unless we find the trial court's decision is clearly and convincingly unsupported by the record and/or contrary to law. R.C. 2953.08; State v. Parker (Jan. 19, 1999), Clermont App. No. CA 98-04-025; State v. Garcia (1998), 126 Ohio App.3d 485; State v.Donnelly, (Dec. 30, 1998), Clermont App. No. CA98-05-034.
 {¶ 26} In order to be found guilty of the charge of intimidation as indicted pursuant to R.C. 2921.04, the State was required to prove that the appellant intimidated or hindered McKenzie "in the filing or prosecution of criminal charges." McKenzie testified that she provided the Sheriff's Department with an incident report and that the matter was assigned to the special docket of a trial court judge. McKenzie testified that Watts was found to have verbally harassed her and the judge suspended him from writing bonds for 30 days. However, the State's exhibits do not reflect this. The exhibits presented by the State include an order, captioned: In Re Bail Bond Principles and Agents Within theJustice Center Complex, dated June 28, 1999; and a contempt order, captioned: In Re In the Matter of Ralph Watts Reginald Crosby DonnellMitchell, dated September 18, 2000. Both of these orders are dated prior to the October 25, 2000 incident between McKenzie and Watts. Further, they do not evidence the "filing or prosecution of criminal charges" against Watts.
 {¶ 27} This court reviewed the appeal of the original Common Pleas Court order dated June 28, 1999, which is characterized as a civil appeal, not criminal, in In re: In the Matter of Ralph Watts and DonnellMitchell, Cuyahoga App. Nos. 78713 and 78991. Based on the State's exhibits it is clear that Watts was sentenced to refrain from writing bonds for 30 days, and a criminal sanction was not imposed.
 {¶ 28} In Dayton Women's Health Center v. Enix (1991),68 Ohio App.3d 579, the court found that "whether a contempt [order] is civil or criminal depends largely on the character of the sanction imposed. * * * Sanctions for criminal contempt thus share three traditional characteristics: (1) the sanction is a punishment; (2) the sanction is imposed for conduct that has occurred in the past; and (3) the purpose of the sanction is to uphold the authority of the court. Civil contempt produces a remedial sanction, which is one intended to coerce the termination of specific misconduct which constitutes a continuing contempt of court." Id. at 591-592.
 {¶ 29} We find that the order and contempt sanctions suspending Watts from writing bonds were civil in nature. There is no evidence that Watts was imprisoned as a result of the contempt sanctions. Further, there is no evidence in the record that Watts was held in contempt, or otherwise sanctioned, regarding the incident with McKenzie which occurred on October 25, 2000. Absent from the record is any evidence presented by the State that McKenzie was the victim of a crime involving Watts. There is no evidence that criminal charges were filed or prosecuted against Watts in this regard. Thus, the State failed to prove one of the essential elements of intimidation pursuant to R.C. 2921.04(A) or (B). We find that reasonable minds could not reach the conclusion reached by the trier of fact in this case and that the trial court's ruling was contrary to law. Accordingly, the appellant's first assignment of error is well taken.
 {¶ 30} Judgment is dismissed; conviction, sentence and probation are vacated. Appellant is discharged.
Timothy E. Mcmonagle, J., and Sean C. Gallagher, J., concur.
[1] {¶ a} The language in the indictment does not mirror R.C.2921.04. The indictment states:
{¶ b} "* * * unlawfully and knowingly and by force or by unlawful threat of harm, did attempt to influence, intimidate or hinder Ann Marie McKenzie, a public servant and/or witness in the discharge of her duty. The indictment more closely resembles the language found in R.C. 2921.03, which provides:
{¶ c} "(A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty."
{¶ d} We note that R.C. 2921.03 does not require the State to prove the element of the "filing or prosecution of criminal charges." However, appellant was indicted under R.C. 2921.04.