[Cite as *Cleveland v. Bank of New York Mellon*, 2013-Ohio-3157.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99559**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## BANK OF NEW YORK MELLON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2012 CRB 003045

**BEFORE:** McCormack, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEYS FOR APPELLANT**

Jason A. Whitacre
Ashley E. Mueller
The Law Offices of John D. Clunk, Co., L.P.A.
4500 Courthouse Blvd., Ste. 400
Stow, OH 44224


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland

By:   William H. Armstrong, Jr.
Assistant Director of Law
Room 106 – City Hall
601 Lakeside Avenue
Cleveland, OH 44114

TIM McCORMACK, J.:

**{¶1}** This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Bank of New York Mellon (hereafter "BONY") appeals from a judgment of the Cleveland Municipal Court that imposed financial sanctions of $45,000 after the court found the bank in contempt for failing to appear in court at two scheduled hearings. For the following reasons, we affirm the judgment of the trial court.

## Substantive Facts and Procedural History

**{¶2}** BONY was a successful bidder for a property at a sheriff's sale that was held after a foreclosure action was filed against the property's former owner. After the sale, on January 19, 2012, the sheriff recorded the deed and provided the deed to the Law Offices of John D. Clunk Co., L.P.A. (the law firm that represented BONY at the proceedings below and also in this appeal). The law firm forwarded the deed to BONY on February 3, 2012.

**{¶3}** In between these dates, on January 23, 2012, the city sent its agent to inspect the property, and the agent cited BONY for a violation of Section 209.01(a)(3) of Cleveland Codified Ordinances, a minor misdemeanor offense, for failing to "abate the nuisance of refuse and/or junk, garbage and food waste, offal, animal wastes, tires, or

other waste" in the area of the property's garage. Summons of the complaint was sent to BONY on February 13, 2012, ordering BONY to appear in court on February 29, 2012.

{¶4} BONY did not appear at the hearing. Subsequently, the trial court placed the case on its Corporation Docket and, on March 23, 2012, sent a judgment entry to BONY, ordering its representative to appear in court on May 7, 2012. The court sent this notice to BONY's address of record, and it also sent courtesy copies of the notice to various organizations and individuals in Cleveland and New York, whom the court through its own investigation, had determined to be BONY's officers or representatives. The notice was also sent to Attorney Keith Anderson, who had represented the bank on other matters in the court.

{¶5} Despite the notices, BONY failed to appear at the May 7, 2012 hearing. As a result, on May 18, 2012, the court ordered BONY to appear on July 2, 2012, to show cause why it should not be held in contempt of the court.

{¶6} BONY again failed to appear at the July 2 show cause hearing. On that day, the court entered a judgment finding BONY in civil contempt of the court's order to appear. In its judgment, the court ordered a fine of $1,000, imposed per day until the time when the defendant made an appearance and entered a plea. The court then set the matter for a status hearing on October 1, 2012.

{¶7} On October 1, 2012, an attorney from the Law Offices of John D. Clunk filed a notice of appearance and appeared at the scheduled hearing on behalf of BONY. At this hearing, BONY entered a plea of not guilty, and the court granted its request to have

the matter continued for a court-supervised pretrial hearing.  At the pretrial hearing, the city dismissed its complaint.

{¶8} Subsequently, on October 31, 2012, BONY filed a Motion to Mitigate Sanctions.  The reasons it gave for a mitigation of the financial sanctions were: (1) BONY was not aware that it had legal title to the subject property on the day of the alleged violation, and (2) BONY had already mitigated the damages by cleaning up the property.  BONY explained that, in a sheriff's sale, the successful bidder would not know when the sheriff's office would process the deed after the sale, or when the deed would be recorded, and therefore, BONY did not have actual knowledge that the deed had been recorded on January 19, 2012, and thus cannot have knowingly violated the municipal ordinance on the day of the citation, January 23, 2012.

{¶9} BONY also argued that the sanctions to compel its presence in court were "unnecessary" because it had been working with a land bank to donate the property to the organization — an agreement was reached on September 21, 2012, and the property was officially transferred on October 12, 2012.

{¶10} The trial court considered several mitigating factors and granted BONY's motion to mitigate sanctions in part.  It reduced the $90,000 fines that had accrued between July 3, 2012 and September 30, 2012, at the per diem rate of $1,000 to $45,000.

{¶11} BONY now appeals from the court's judgment.

**{¶12}** We review a trial court's contempt finding for an abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 69 Ohio St.3d 69, 573 N.E.2d 62 (1991). An abuse of discretion implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## Contempt

**{¶13}** It is long established that in Ohio, the court has an inherent power to exercise its contempt power. *Hale v. State*, 55 Ohio St. 210, 45 N.E. 199 (1896). In addition to this inherent power, the courts are also given statutory authority to punish acts of contempt under two statutes, R.C. 2705.01 and 2705.02, which govern direct contempt and indirect contempt, respectively.

**{¶14}** R.C. 2705.01 ("Summary Punishment for Contempt") authorizes direct contempt proceedings. It states: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

**{¶15}** An indirect contempt, on the other hand, is a contemptuous act that takes place outside of the presence of the court. *State v. Drake*, 73 Ohio App.3d 640, 598 N.E.2d 115 (8th Dist.1991). Indirect contempt occurs when a party engages in conduct outside the presence of the court that "demonstrates a lack of respect for the court or its lawful orders." *Byron v. Byron*, 10th Dist. No. 3AP-819, 2004-Ohio-2143, citing *Drake* at 643.

{¶16} Because the offending conduct in this case did not take place in the presence of the court, it is an indirect contempt. R.C. 2705.02 defines various kinds of indirect contempt, and the indirect contempt pertinent to this case is defined in R.C. 2705.02(A) as "disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer."

{¶17} For indirect contempt, R.C. 2705.03 provides the following procedure to be observed: "In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel."

{¶18} Thus, the courts have both inherent and statutory authority to punish acts of contempt. In addition, R.C. 1901.13 specifically provides municipal courts with the power to punish contempt. *In re Sherlock*, 37 Ohio App.3d 204, 525 N.E.2d 512 (2d Dist.1987).

## Criminal v. Civil Contempt

{¶19} In addition to being distinguished by whether the offending act occurs in or outside the presence of the court, contempt can be characterized as criminal or civil, depending on the "character and purpose" of the punishment. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). The distinction between civil and criminal contempt is important in that, in a criminal contempt, the constitutional safeguards must be observed as in any other criminal proceedings. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 11. In other words, in a

criminal contempt, the trial court must advise a defendant of his constitutional rights, such as right to counsel, right to subpoena witnesses, right to cross-examine a witness, and right for the guilt to be proven beyond a reasonable doubt.

{¶20} Also, in a criminal contempt, sanctions are punitive in nature, designed to punish the party for a completed act of disobedience or past failures to comply with the court's order. *Brown* at 254.

{¶21} In a civil contempt, on the other hand, punishment is remedial, intended to "coerce the termination of specific misconduct that constitutes a continuing contempt of court." *Dayton's Women Health Ctr. v. Enix*, 68 Ohio App.3d 579, 589 N.E.2d 121 (2d Dist.1991). Furthermore, because the sanction in a civil contempt is for a coercive purpose, one charged and found guilty of civil contempt must be allowed to purge himself or herself of the contempt by showing compliance with the court's order. *Spero v. Project Lighting, L.L.C.*, 11th Dist. No. 2011-P-0002, 2011-Ohio-6521, ¶ 29; *DeLawder v. Dodson*, 4th Dist. No. 02CA27, 2003-Ohio-2092, ¶ 10. Finally, in a civil contempt, the sanction is imposed "for the benefit of the complainant." *Brown* at 253.

{¶22} To achieve the coercive effect in a civil contempt, R.C. 2705.06 allows the court to imprison a defendant: "When the contempt consists of the omission to do an act that the accused yet can perform, he may be imprisoned until he performs it." This is referred to as coercive imprisonment.

{¶23} For the purpose of this case, it is worth noting that the United States Supreme Court has pointed out that "[a] close analogy to coercive imprisonment is a per

diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Intl. Union v. Bagwell*, 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

## Analysis

**{¶24}** In this case, BONY failed to appear on February 13, 2012, and again on May 7, 2012, at the scheduled hearing regarding the city's complaint for its alleged housing code violation. The failure of a party to appear at a scheduled hearing is not a direct contempt summarily punishable. Rather, the party has a right to explain the circumstances of its failure to appear. *East Cleveland v. Reed*, 54 Ohio App.2d 147, 376 N.E.2d 973 (8th Dist.1977). The trial court in this case provided such an opportunity here; in compliance with the procedure set forth in R.C. 2705.03, the court issued a show cause order on May 18, 2012, ordering BONY to show cause as to why it should not be punished for contempt of court.

**{¶25}** Although the trial court duly provided an opportunity for BONY to explain its failure to appear, BONY failed to appear at the show cause hearing.

**{¶26}** As a result, the court found BONY in civil contempt. In its judgment, the court explained that BONY faced a potential maximum fine of $1,000, if found guilty of the minor misdemeanor offense charged by the city, and furthermore, each day of its non-compliance is a separate offense. The court therefore determined that $1,000 would be an appropriate per diem financial sanction to compel BONY's presence in the court.

The fines would accrue until the defendant made an appearance and entered a plea. BONY eventually appeared in October 1, 2012.

{¶27} In a subsequent motion to mitigate the sanctions, BONY acknowledged it received the summons and complaint, but did not explain why it failed to appear in court on three scheduled hearings, including the show cause hearing. Instead, BONY asked the financial sanctions to be mitigated on the grounds that BONY was not aware of having legal title to the subject property on the date of the complaint, and that it had since cleaned up the property and had also been working on donating the property to a land bank. Although these circumstances may have explained why the city ultimately dismissed the complaint, none of these reasons pertained to why BONY did not obey the court's order regarding the scheduled hearings.

{¶28} In a comprehensive decision issued on January 18, 2013, the trial court explained that a corporation, like any other defendant, must appear before the court to enter a plea and conclude a case. *Unlike* a natural person who failed to appear, however, a warrant for a corporate defendant's arrest cannot be issued. Nonetheless, the inability of a corporation to be arrested and brought before a judge does not render a corporation exempt from having to appear in the court. Consequently, a per diem fine was proper in this case to coerce the corporate defendant's appearance in court. The court observed that the coercion proved to be effective indeed, because sometime after the fines took effect, BONY appeared in court.

**{¶29}** The court then considered four possible mitigating factors under the circumstances of this case. First, it noted BONY similarly failed to appear in five other cases before the housing court; the present motion to mitigate sanctions was the sixth such motion from the same defendant. In fact, as recent as January 7, 2013, BONY was found in civil contempt for failing to appear at the show cause hearing in yet another case. Second, the court noted BONY's non-appearance was a deliberate act — in its motion to mitigate sanctions, BONY stated it did not appear at the hearings because it had been working with the city's inspector on the subject property, which evidenced a deliberate decision not to appear in court. The court decided that these two factors weighed against mitigation.

**{¶30}** Third, the court considered BONY to have demonstrated a willingness to resolve the underlying charge by eventually retaining counsel for the matter and concluding it in an expeditious manner. Fourth, the court observed that the violation of the housing code was not of an on-going nature: BONY was only cited for a minor misdemeanor violation for a single day. The court decided these two factors weighed in favor of mitigation.

**{¶31}** The court stated that BONY purged itself of contempt when it eventually appeared in court. After considering the mitigating factors, the court determined BONY has shown good cause to mitigate a portion of the $90,000 sanctions. The court noted specifically that it had allowed the sanctions against BONY to be mitigated generously in the prior five cases — the sanctions for those five cases totaled only $39,600. However,

because BONY appeared to treat the payments of mitigated damages as merely a cost of doing business, without any modification in the way it conducted itself in court, the court ordered BONY to pay half of the sanctions ($45,000) in this case.

{¶32} Circumstances similar to this case existed in *Cleveland v. Paramount Land Holdings, L.L.C.*, 8th Dist. Nos. 96180, 96181, 96182, and 96183, 2011-Ohio-5382, and our holding from that case is directly on point. There, the city of Cleveland issued several citations alleging health code violations in properties owned by a corporation. The corporation failed to show at several scheduled hearings, and like BONY, failed to show at the show cause hearing. As a result, the trial court found the corporation in contempt, and similarly issued a per diem fine of $1,000 to coerce the corporation's appearance in court.

{¶33} Based on these circumstances, this court found the contempt to be civil contempt, noting that the per diem sanctions were designed to coerce the corporate defendant to appear, and the defendant was given an opportunity to purge the contempt by appearing in court — once it appeared, the trial court found the contempt purged and immediately stopped the daily fines.

{¶34} Similarly here, the trial court used a per diem fine to "exert a constant coercive pressure" on a corporate defendant, *Bagwell*, 512 U.S. at 829, 114 S.Ct. 2552, 129 L.Ed.2d 642, and the fine was intended "to coerce the termination of the defendant's misconduct" in repeatedly failing to appear at scheduled hearings, *Enix*, 68 Ohio App.3d 579, 589 N.E.2d 121. Once BONY appeared, the court found the contempt

purged and immediately stopped the fines. Therefore, as in *Paramount Land*, the contempt here was civil in nature.

**{¶35}** Under the first assignment of error, BONY argues *Paramount Land*, 8th Dist. Nos. 96180, 96181, 96182, and 96183, 2011-Ohio-5382, is distinguishable because, unlike *Paramount Land,* the fines in this case were not imposed "for the benefit of the complainant." BONY therefore claims the contempt in this case was criminal, not civil, and the criminal nature of the contempt required the trial court to comply with due process requirements before it imposed the financial sanctions.

**{¶36}** According to BONY, because the corporate defendant in *Paramount Land* was ultimately found guilty of the offenses, the city "prevailed," and therefore the sanctions could be deemed as "for the benefit of the complainant," rendering the contempt civil. BONY argues in this case the city dismissed the charge against BONY, therefore, the imposition of the sanctions could not possibly be construed as "for the benefit of the complainant."

**{¶37}** This argument lacks merit. The city dismissed the case only after the fines were imposed and BONY began to work with the city's counsel and eventually appeared in court to answer the complaint. Thus, the imposition of the daily fines appears to have indeed "benefitted the complainant." In any event, the pertinent inquiry is whether the court imposed the sanctions *for* the benefit of the complaint. The record reflects the trial court imposed the fines for the sole purpose of coercing BONY to appear in court to answer the city's charge of a housing code violations. Once BONY appeared, the court

found the contempt purged and immediately stopped the fines. Therefore, BONY's claim is not supported by the record.

{¶38} We further note that, *even if* we were to characterize the contempt here as a criminal contempt, the record reflects the trial court properly safeguarded BONY's due process rights. Before finding BONY in contempt for its repeated failures to appear, the court ordered a show cause hearing and provided BONY an opportunity to be heard regarding the allegation of contempt, pursuant to R.C. 2705.03. In its notice of the show cause hearing sent to BONY, the court advised BONY of its various constitutional rights regarding the contempt charge, including a right to obtain witnesses by compulsory process, right to cross-examine the witnesses, and a right to have the contempt, if criminal in nature, proven beyond a reasonable doubt. BONY, however, chose not to avail itself of the opportunity to be heard.

{¶39} Furthermore, after BONY finally appeared in court and subsequently requested mitigation of the sanctions, the court heard its argument and carefully weighed several mitigating factors, finding two of the factors in favor of BONY, and reduced the financial sanctions to $45,000. On this record, we find no violations of BONY's due process rights, even if we were to characterize the contempt as criminal in nature. The first assignment of error is without merit.

{¶40} Under the second assignment, BONY argues the sanctions imposed are arbitrary, unreasonable, and unconscionable on the grounds that (1) it did not have dominion and control over the subject property on the day the citation was issued, and (2)

the maximum fine for the underlying offense was far less than the fines imposed by the court.

**{¶41}** Again, BONY fails to understand the coercive nature of the fines and the independence of the contempt charge from the underlying offense. Because of the unavailability of coercive imprisonment for a corporate defendant, the per diem fine of $1,000 here was a measured effort by the court to coerce the appearance of such a defendant, who repeatedly ignored the court's orders to appear at scheduled hearings. We find no abuse of discretion by the trial court in imposing a daily fine to "exert a constant coercive pressure" on the corporate defendant in order to secure its compliance with the court's order. The second assignment of error is without merit.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR