JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, C.L. ("mother"), appeals the July 24, 2007 judgment of the Cuyahoga County Court of Common Pleas, Juvenile Court Division. For the reasons stated herein, we affirm.
 {¶ 2} The following facts give rise to this appeal. Mother and C.G. ("father") are the parents of J.L., who was born in August 2002. The parents were never married to one another. On November 15, 2002, father filed a complaint to establish a parent-child relationship between himself and J.L., and to pay child support. Thereafter, mother was named the primary residential parent and father was awarded visitation. From that time forward, mother continuously interfered with father's visitation.
 {¶ 3} Despite acquiring court-ordered visitation and companionship rights with J.L. in April 2006, father was refused contact with J.L. by mother. In violation of court order, mother persistently denied father his rights to visitation, as well as telephone contact with J.L. and access to medical records of J.L. The only excuse provided by mother was her unfounded belief that J.L. had been mistreated by father.
 {¶ 4} As a result of mother's actions, father filed various motions with the trial court. A trial was held June 19-22, 2007 upon the following motions: (a) father's motion for professional and attorney's fees filed July 7, 2006; (b) father's motion for custody filed July 21, 2006; (c) father's motions to show cause relative to visitation *Page 4 
and for attorney's fees filed August 3, 2006; (d) father's renewed motion for custody filed January 5, 2007; and (e) father's motion to show cause relative to visitation and for attorney's fees filed January 5, 2007. Additional facts relative to these motions are set forth under the assigned errors.
 {¶ 5} In its July 24, 2007 judgment entry, the trial court awarded custody of J.L. to father, found mother in contempt and set purge conditions, imputed income to mother and ordered her to pay child support, and awarded father a portion of his requested attorney's fees.
 {¶ 6} Mother has appealed the ruling of the trial court, raising two assignments of error for our review. Her first assignment of error provides as follows: "The trial court abused its discretion by modifying [J.L.]'s legal and residential custodian without analyzing all three statutory elements."
 {¶ 7} A trial court is entitled to broad discretion in determining whether a change in allocation of parental rights and responsibilities is warranted. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 8} The modification of parental rights and responsibilities, as applicable in this case, is governed by R.C. 3109.04(E)(1)(a)(iii), which states:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, *Page 5 based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 "* * *
 "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 9} Stated succinctly, modification of parental rights can occur only if (1) there was a change in circumstances since the parties filed the shared parenting plan with the court; (2) a modification was deemed to be in the best interests of the parties' children; and (3) the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children. In reJ.C., Cuyahoga App. No. 87028, 2006-Ohio-2893. In this matter, mother maintains that the statutory elements warranting modification were not satisfied. We are unpersuaded by her argument.
 {¶ 10} The threshold inquiry is whether a change has occurred in the circumstances of one of the parents or of the child. In determining whether a change of circumstance has occurred, "the change must be a change of substance, not a slight or inconsequential change." Davis v.Flickinger, 77 Ohio St.3d 415, 418, *Page 6 1997-Ohio-260. Thus, a trial court must have wide latitude in considering all the evidence before it in determining whether a change has occurred, and an appellate court will not disturb a trial court's finding absent an abuse of discretion. Id. at paragraphs one and two of the syllabus.
 {¶ 11} Here, the trial court found that since April 27, 2006, mother had (1) steadfastly and without just excuse denied the father and the child all rights of companionship and contact, (2) purposefully denied father access to the child's medical providers, (3) lacked stable housing and drifted between hotels and homeless shelters, (4) persisted in making unfounded and baseless allegations that J.L. had been sexually abused by father, and (5) demonstrated a profound lack of insight into the child's needs.
 {¶ 12} Although mother claims that she was forced into a state of homelessness and secured permanent housing in February 2007, we find that the record indicates that she had demonstrated instability with her housing and that this was an appropriate consideration. The trial court considered that despite being able-bodied and having a history of gainful employment, mother had remained unemployed and relied on Social Security benefits as her sole source of income. After reviewing the mother's income, the court determined that the prospects of her retaining adequate and stable housing were poor. Insofar as mother argues that her lack of employment was not a change, as she was not employed at the time of the prior decree, the record reflects that the trial court referenced mother's employment *Page 7 
status as a contributing factor to her unstable housing.
 {¶ 13} The trial court also pointed to other factors that demonstrated a change in circumstances. Most significantly, the trial court found that mother had steadfastly denied father his visitation rights with J.L. "`It is well settled that a custodial parent's interference with visitation by a noncustodial parent may be considered a `change of circumstances' which would allow for a modification of custody."Sheppeard v. Brown, Clark App. No. 2007 CA 43, 2008-Ohio-203, quotingWilburn v. Wilburn (2001), 144 Ohio App.3d 279, 760 N.E.2d 7, quotingMitchell v. Mitchell (1998), 126 Ohio App.3d 500, 710 N.E.2d 793;Scaffold v. Scaffold, Medina App. No. 04CA0068-M, 2005-Ohio-4546. In this case, mother's denial of father's visitation rights was pervasive.
 {¶ 14} Accordingly, upon our review, we find the record supports the trial court's determination of a change in circumstances.
 {¶ 15} Next, we find that the trial court properly considered the best interest of the child in reaching its determination. The court outlined the factors to be considered under R.C. 3109.04, and proceeded to assess all relevant factors. The court considered the instability demonstrated by mother, the isolation of the mother's household and her limited social environment, the developmental delays and antisocial and oppositional behavior demonstrated by J.L. while under mother's care, and mother's refusal to abide by court orders. The court found that father provided a more stable environment for the child. The court indicated that since February 2007, *Page 8 
when J.L. was placed with father, J.L. had overcome developmental delays, eliminated his oppositional and anti-social behavior, no longer experienced night terrors, and enjoyed companionship with his father's extended family, neighbors, and friends. Also, father provided mother with her visitation as required, actively promoted a positive relationship between J.L. and mother, took an active role in securing family counseling, and demonstrated a great deal of insight into the needs of his son.
 {¶ 16} Finally, mother contends that the trial court failed to analyze if the harm suffered by J.L. outweighed the benefit of reallocation. Mother points to the testimony of Dr. Patricia McCullough, J.L.'s former therapist, who testified to her belief that mother was an excellent mother and that J.L. should remain with mother so that she could continue his treatment. She also testified to her belief that abruptly separating J.L. from his mother and siblings was upsetting for J.L. Mother also points to the testimony of J.L.'s siblings about their close bond and relationship to J.L.
 {¶ 17} In considering mother's challenge to the trial court's decision, we are mindful that an appellate court will not reverse a trial court's decision regarding the custody of children that is supported by competent and credible evidence absent an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
 {¶ 18} Here, the trial court considered the testimony and evidence regarding the custody issue and applied the factors outlined in R.C. 3109.04 in its decision to *Page 9 
reallocate parental rights and responsibilities. The trial court recognized that mother and J.L. miss one another when they are not together. Also, it is clear from the detailed factual findings that the trial court considered the impact on the child and all parties involved, and determined that the loss of mother as the residential parent was outweighed by the advantages of the change.
 {¶ 19} We conclude that the trial court's determination was supported by competent and credible evidence and find no abuse of discretion occurred. Mother's first assignment of error is overruled.
 {¶ 20} Mother's second assignment of error provides the following: "The trial court abused its discretion by changing the residential parent and legal custodian as a sanction for contempt and by ordering an option to purge the contempt that purports to regulate future conduct."
 {¶ 21} Initially, mother argues that a change in custody cannot be used as a sanction for contempt. This argument is clearly misguided. A review of the trial court's decision reflects that the reallocation of parental rights and responsibilities was addressed with respect to father's motions for custody. The court separately addressed father's motions for contempt that pertained to mother's violation of prior court orders regarding visitation and family counseling.
 {¶ 22} In considering the motions to show cause, the trial court found mother was in contempt for failing to abide by the court's prior orders. As punishment for the contempt, the court sentenced mother to jail for a period of thirty days, which *Page 10 
sentence was suspended, upon certain purge conditions. The purge conditions prohibited mother, for a period of not fewer than 36 months from the judgment entry, from doing the following: (1) having J.L. examined by any medical or dental provider, except under circumstances that constitute a bona fide medical or dental emergency; (2) presenting J.L. to any health provider, counselor or therapist; (3) appearing at J.L.'s day-care, preschool, school or babysitters, except for school functions which are open to the public; and (4) withholding J.L. or not relinquishing J.L. promptly in accordance with all orders set forth in the judgment entry. The court further ordered that mother pay to father $3,000 for his attorney's fees in the prosecution of his motions to show cause no later than January 18, 2008.
 {¶ 23} Mother contends that the purge conditions are unreasonable and fail to provide her with an opportunity to purge the contempt. She further states that the purge conditions are an invalid attempt to regulate future conduct.
 {¶ 24} Judicial sanctions for civil contempt may be employed to coerce a defendant into compliance with the lawful orders of the court.Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140; Cincinnati v. CincinnatiDist Council 51 (1973), 35 Ohio St.2d 197, 206. Such sanctions will not be reversed unless there has been an abuse of discretion. State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11.
 {¶ 25} A sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt. In re Purola
(1991), 73 Ohio App.3d 306, 312. The trial court abuses its discretion in ordering purge conditions which are *Page 11 
unreasonable or where compliance is impossible. Id. at 313. The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy. Marx v.Marx, Cuyahoga App. No. 82021, 2003-Ohio-3536.
 {¶ 26} Mother relies on the case of Tucker v. Tucker (1983),10 Ohio App.3d 251, for the proposition that the court's order could not attempt to regulate future conduct. Tucker was a support arrearage case in which the trial court attempted to coerce future child support payments, even though the contempt could be purged and payment made current once the arrearage was paid. Id. The instant matter does not involve a violation of a child support order upon which an arrearage can be paid to purge the contempt. Rather, in this case, mother violated court orders pertaining to visitation.
 {¶ 27} As recognized in Summe v. Summe (June 6, 1990), Montgomery App. Nos. 11452, 11474: "It is difficult to formulate a remedy to allow purging of contempt for violation of a visitation order. Smith v.Smith (1980), 70 Ohio App.2d 87. Unlike a support arrearage case where the contemnor can pay the monetary amount and purge himself of any alleged contempt, a trial court cannot fashion a remedy to correct past visitation violations but can compel future compliance with the court-ordered visitation schedule and, thus, allow the contemnor to purge himself of any contempt. Id. at 91-92."
 {¶ 28} Thus, several courts have recognized that "[w]hile the trial court cannot *Page 12 
fashion a remedy to return past visitations to the defendant by allowing the plaintiff to purge herself of contempt, the trial court can compel future compliance with the visitation schedule established by the court order, thus, allowing plaintiff to purge herself of any alleged contempt." Smith v. Smith (1980), 70 Ohio App.2d 87, 92; Caldwell v.Caldwell, Gallia App. No. 02CA17, 2003-Ohio-1752; Summe, supra;Bowers v. Bowers (Nov. 29, 1990), Franklin App. No. 90AP-130.
 {¶ 29} In this matter, mother's contemptuous behavior interfered with father's visitation rights and was contrary to the best interest of the child. Upon our review, we find that the purge conditions imposed by the trial court were reasonable and capable of compliance.
 {¶ 30} Mother also claims that the requirement that she pay $3,000 in attorney's fees in such a short time frame and in light of her financial condition makes compliance with this condition impossible. The record before us reflects that the trial court found that mother had previously been gainfully employed and that she was able-bodied and capable of full-time employment. We also recognize that the trial court's order was issued in July 2007, yet payment was not due until January 2008. We find that the trial court's decision was based on competent, credible evidence, and that the imposition of $3,000 in attorney's fees to be paid by January 18, 2008 was reasonable and capable of compliance.
 {¶ 31} Finally, insofar as mother references the imposition of child support, her obligation to pay child support was not among the purge conditions, as she *Page 13 
represents. Nevertheless, insofar as the court's judgment pertaining to custody included an order that mother pay child support to father in the monthly amount of $401.42, we find no error in the trial court's computation of child support, which included imputed income to mother.
 {¶ 32} Finding no abuse of discretion occurred, we overrule mother's second assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., CONCURS; MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)