[Cite as *Guy v. Shorey*, 2019-Ohio-977.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 106923

---

**AMY GUY, F.K.A. SHOREY**

PLAINTIFF-APPELLEE

vs.

**JAMES D. SHOREY**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-15-359099

**BEFORE:** Handwork, J.,* S. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 21, 2019

**ATTORNEY FOR APPELLANT**

Brent L. English
Law Offices of Brent L. English
The 820 Building, 9th Floor
820 Superior Avenue, West
Cleveland, OH 44113


**ATTORNEY FOR APPELLEE**

Manav H. Raj
Rieth & Antonelli & Raj
1406 West 6th Street, Second Floor
Cleveland, OH 44114

PETER M. HANDWORK, J.:*

{¶1}   Amy Guy, f.k.a. Shorey, and James Shorey were divorced according to the terms of a separation agreement that the court incorporated into the divorce decree.  As relevant to this appeal, the parties agreed that James would retain the house free and clear of any claim by Amy, provided he obtained refinancing within 120 days and removed her name from mortgage liability.  The parties also agreed that if James failed to obtain refinancing within that time frame, the property would be immediately listed for sale by a realtor of Amy's choosing and "sold post-haste at a mutually agreeable price as recommended by the realtor."  James not only failed to obtain financing, he admitted that he did not actually file an application for refinancing because he claimed that prospective lenders told him that he had to have full-time employment (at the time, he was starting a company) as a condition of acceptance.  Amy filed a motion for specific performance and asked that James be held in contempt.

{¶2} A magistrate conducted a hearing on the motion and found that although James had actually listed the house for sale after failing to obtain refinancing, he did so on his own, and not within 120 days after the separation agreement was reduced to judgment. The magistrate also found that James listed the house without consulting Amy as required by the divorce decree. The magistrate concluded that James be held in contempt and allowed to purge the contempt by listing the house for sale with a realtor of Amy's choosing, at a price recommended by the realtor. The magistrate granted Amy's realtor permission to speak with Amy about all aspects of the sale, including the listing price. Finally, the magistrate ordered James to pay $5,500 towards Amy's attorney fees. The court approved and adopted the magistrate's decision over James's objections.

## I. Evidence of Contempt

{¶3} A contempt finding will not be disturbed on appeal unless the court abused its discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). "When appellate review of a contempt adjudication entails an inquiry into the weight of the evidence to sustain the judgment, the applicable standard of review turns upon the nature of the contempt decree." *ConTex, Inc. v. Consol. Technologies, Inc.*, 40 Ohio App.3d 94, 95, 531 N.E.2d 1353 (1st Dist.1988). Alleged contempt of a divorce decree is a civil contempt, *Ganelli v. Ganelli*, 8th Dist. Cuyahoga No. 72757, 1998 Ohio App. LEXIS 2596, 9 (June 11, 1998), and we apply the usual rules regarding the weight of the evidence: we consider whether "the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In doing so, we "make every presumption in favor of the finder of fact, and construe the evidence, if possible, to sustain the judgment of the trial court." *Id*. at ¶ 21.

{¶4} In Article 3.01 of the settlement agreement, the parties agreed that James would keep the marital residence free and clear of any claim by Amy, and:

> As such, Husband shall refinance said obligation within one hundred twenty (120) days of the execution of this Agreement thereby releasing Wife from any and all financial liability thereon. Concurrent with the execution of this Agreement, Husband shall remit to Wife the sum of Ten Thousand Dollars ($10,000.00) to Wife as and for Division of Property herein.
>
> Concurrent with the execution of this Agreement, Wife shall execute a quit claim deed transferring all her right[,] title[,] and interest in said property to Husband, and Husband shall pay the mortgage, line of credit, real estate taxes, utilities and all other expenses relative to said parcel of real estate, and he shall indemnify and save the Wife absolutely harmless thereon.
>
> In the event that Husband fails to refinance said property within the prescribed time period or is more than thirty (30) days late on his financial obligation hereinabove, the residence shall be immediately listed for sale on the market with an agent of Wife's selection from Howard Hanna and sold post-haste at a mutually agreeable price as recommended by the realtor.

{¶5} The court reduced the separation agreement to judgment in a divorce decree filed on May 26, 2016. As required by the terms of the separation agreement, Amy filed a quitclaim deed and renounced her interest in the property. James, who desired to retain the house, initiated discussions with a bank and two savings and loan associations about refinancing the house. James acknowledged, at the time, that his consulting business did not provide him with the income necessary to qualify for refinancing. He said that all three financial institutions told him that he would not be approved for refinancing, so he did not formally file an application for refinancing and risk damaging his credit rating. Nevertheless, James testified that he was in the process of expanding his consulting business and anticipated that income resulting from that expansion would qualify him for refinancing.

**{¶6}** When James did not obtain financing within 120 days from entry of the divorce decree, Amy filed a motion to have James show cause why he should not be held in contempt for failing to list the house for sale consistent with the terms of the separation agreement. James then listed the house for sale within the month, albeit not with a realtor of Amy's choosing as required by the separation agreement. After the house had been on the market for six months without any offers, the realtor recommended that James lower the price. James refused to lower the price.

**{¶7}** From this evidence, the magistrate could rationally conclude that James violated the separation agreement. James admittedly failed to obtain refinancing within 120 days after entry of the divorce decree. This failure, whether or not intentional on his part, meant that the house had to be immediately listed for sale by a realtor of Amy's choosing and sold at a mutually agreeable price as recommended by the realtor. James did list the house for sale, but did not use a realtor of Amy's choosing. His violation of the separation agreement was manifest.

**{¶8}** It is true that Amy did not subsequently object to James's choice of realtor, but James's decision to hire a realtor of his own choosing — an act that occurred after Amy filed her show cause motion — was a breach of the separation agreement and thus constituted a basis for finding James in contempt. But even if we assume without deciding that Amy's failure to object to James's choice of realtor constituted a waiver, the fact remains that competent, credible evidence supported the court's conclusion that James did not abide by the "post-haste" timeline for selling the house.

**{¶9}** At the time of the contempt hearing, the house had been on the market for 11 months and remained unsold. In fact, we were informed at oral argument in this appeal — a date over two years from when the house had been listed for sale — that the house has yet to be

sold. James's realtor testified that the sale price of the house should be lowered, but James refused to lower the price. Notably, James testified and candidly acknowledged his desire to keep the house. The magistrate could reasonably conclude that James's desire to keep the house suggested a motivation for his rejection of a lowered listing price that would spur the sale. Eleven months on the market fails to meet the "post-haste" timeline for selling the house, even acknowledging that term is inherently imprecise.

{¶10} James argues that he lacked any intent to violate the divorce decree, particularly with respect to Amy. He maintains that Amy was fully aware that he had listed the house but never objected that he had done so without first letting her choose the realtor or agree to the listing price used by his realtor.

{¶11} James's arguments are irrelevant. "Contempt of court is defined as disobedience of an order of a court." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 56, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Whether "the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Id*. at paragraph three of the syllabus. *See also Pugh v. Pugh*, 15 Ohio St.3d 136, 136, 472 N.E.2d 1085 (1984), paragraph one of the syllabus ("Proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt."). The court did not err by finding James in contempt of the divorce decree.

## II. Purge Conditions

{¶12} As a condition for purging James's contempt, the court ordered that he list the house with a realtor chosen by Amy and "at the price recommended by" the realtor. James argues that allowing the listing to be at a price recommended by the realtor is an impermissible

purge condition because it alters the divorce decree term that the house be listed at "a mutually agreeable price as recommended by the realtor."

{¶13} "A property settlement provision contained in a separation agreement, which is subsequently incorporated into a divorce decree * * * is enforceable by contempt proceedings." *Harris v. Harris*, 58 Ohio St.2d 303, 304, 390 N.E.2d 789 (1979), paragraph one of the syllabus. When a party is in contempt or disobedience of a court order, the contemnor must be given a chance to purge the contempt. *Cleveland v. Paramount Land Holdings, L.L.C.*, 8th Dist. Cuyahoga Nos. 96180, 96181, 96182, and 96183, 2011-Ohio-5382, ¶ 12.

{¶14} A court may employ judicial sanctions for civil contempt to coerce a party to comply with lawful orders. *C.G. v. C.L.*, 8th Dist. Cuyahoga No. 90341, 2008-Ohio-3135, ¶ 24. This court reviews such sanctions for an abuse of discretion. *Id.*

> A sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt. *In re Purola* (1991), 73 Ohio App.3d 306, 312, 596 N.E.2d 1140. The trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible. *Id.* at 313. The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy. *Marx v. Marx*, 8th Dist. Cuyahoga No. 82021, 2003-Ohio-3536.

*Id.* at ¶ 25.

{¶15} The goal of Amy's motion to show cause as to why James should not be held in contempt of court was to compel his obedience to the terms of the separation agreement regarding his obligation to refinance the house. The court granted the motion to show cause under terms meant to coerce James's obedience to the separation agreement. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). James argues that the purge condition was impermissible because it deviates from the separation agreement. However, he

has not demonstrated that the purge condition was unreasonable or impossible for him to satisfy. Accordingly, we overrule this assignment of error.   III. Attorney Fees

{¶16} The court ordered James to pay $5,500 for Amy's attorney fees in prosecuting the contempt proceeding.  James concedes that the court had the discretion to include reasonable attorney fees as part of the costs taxed to a defendant found in contempt, but maintains that he was not in contempt, so no fees should have awarded.   As discussed in part I of this opinion, the court validly found James was in contempt of the separation agreement.   Because James's argument relating to attorney fees is wholly based on the refuted assertion that he was not in contempt, we summarily overrule this assignment of error.

{¶17} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the domestic relations court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
*PETER M. HANDWORK, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS WITH SEPARATE OPINION

*(Sitting by Assignment:  Judge Peter M. Handwork, retired, of the Sixth District Court of Appeals).

SEAN C. GALLAGHER, P.J., CONCURRING:

{¶18}  I concur with the majority decision.  I write to further address James's challenge to the purge conditions.

{¶19}  James argues that the trial court abused its discretion by imposing purge conditions that altered the terms of the divorce decree.  Not only does he challenge the requirement that the listing price be established based upon the realtor's recommendation, but also, he challenges other requirements that were imposed.

{¶20} A trial court is permitted to order purge conditions to effectuate compliance with the property division in a divorce decree. *Chasko v. Chasko*, 8th Dist. Cuyahoga No. 93314, 2010-Ohio-3599, ¶ 24-25.  James's contempt was subject to the following purge conditions:

1. Maintaining a listing of the property with a licensed real estate agent, chosen by Amy Guy;
2. Listing the property at the price recommended by the listing real estate agent;

3. Granting permission to the listing real estate agent to speak to Amy Guy with regard to all aspects of the sale of the property including but not limited to the listing price of the home;

4. Maintaining the property in saleable condition both as to the exterior and the interior of the residence;

5. Reimbursing Amy Guy for her attorney fees in the amount of $5,500.00;

The trial court's order also imposed certain additional requirements aimed at relieving Amy from the mortgage liability, and awarded Amy $5,500 for her attorney fees, which were subject to reimbursement by James.

{¶21} Contrary to James's argument, the purge conditions imposed by the trial court were not an impermissible modification of the divorce decree.  James was found to be in contempt for failing to comply with the court's prior orders pertaining to the marital residence.  As stated by

the trial court, "Mr. Shorey has a Court ordered obligation to either refinance the Fairmount property to remove Ms. Guy's name from the liability or to sell the property to remove Ms. Guy's name from the liability." The trial court was permitted to impose purge conditions to effectuate James's compliance with the property division under the divorce decree. *See Chasko* at ¶ 24-25. "The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy." *Marx,* 8th Dist. Cuyahoga No. 82021, 2003-Ohio-3536, at ¶ 22.

**{¶22}** James argues that the condition that the listing price be based upon the realtor's recommendation is not contained in the divorce decree. However, the record reflects that James acted to impede the sale of the marital home and was unwilling to lower the sale price of the home. The purge condition imposed by the trial court allows for the expedited sale of the home and is consistent with enforcing the property division under the divorce decree. James also objects to the condition that he keep the property in "saleable condition." Contrary to his argument, this condition already was required under the divorce decree. James further challenges the additional requirement involving application of the proceeds from the sale of the adjacent lot to any remaining mortgages, claiming this is an impermissible attempt to regulate future conduct. However, this requirement is consistent with relieving Amy of her legal obligations associated with the marital residence. Finally, he objects to the purge condition requiring him to reimburse Amy for her attorney fees, but he fails to cite any authority to support this argument.

**{¶23}** James has not demonstrated that any of the purge conditions are unreasonable or impossible to satisfy. Because there was no abuse of discretion by the trial court, its decision should be affirmed.