[Cite as *Lelak v. Lelak*, 2021-Ohio-519.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| M. ANGELA LELAK (aka SIDDALL) | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28872 |
| | : | |
| v. | : | Trial Court Case No. 1982-DR-1530 |
| | : | |
| JOHN W. LELAK, JR. | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of February, 2021.

. . . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Plaintiff-Appellant

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841 and JAMES D. MILLER, Atty. Reg. No. 0080357, One South Main Street, Suite 1590, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} M. Angela Lelak (now known as Siddall) appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which overruled her motion to hold her ex-husband, John W. Lelak, Jr., in contempt for failing to abide by the terms of the parties' divorce decree. For the reasons set forth below, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I.    Facts and Procedural History

{¶ 2} This case is before us on a second appeal regarding the same post-decree issues. Because facts relevant to Siddall's first appeal are also relevant to this appeal, we will briefly recite them.[1]

{¶ 3} Lelak and Siddall were divorced in January 1983. In the final judgment and decree of divorce, the trial court awarded the sum of $10,363 to Siddall as her share of Lelak's pension. Because the pension benefits were not payable or vested at the time of the divorce, the court ordered Lelak to pay Siddall $50 per week toward her share of the pension. The decree also provided that Lelak was not allowed to withdraw any of his retirement benefits without providing "ten days written notice to [Siddall] at any time prior to the full payment due to [Siddall]."

{¶ 4} In June 1983, Lelak filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code. *See In re Lelak*, 36 B.R. 164 (Bankr.S.D.Ohio 1984). In his petition, Lelak "named [Siddall] as an unsecured creditor for 'non-alimony obligations

---

[1] For an in-depth statement of the facts and findings made in the prior appeal, *see Lelak v. Lelak*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807 ("*Lelak I*").

arising from the divorce judgment and decree, incl. retirement & Citicorp' in the amount of $18,050." *Id.* at 166. Siddall filed a complaint in the bankruptcy court for a determination of "the dischargeability of her claim for $10,363 in 'retirement benefits' against [Lelak] arising out of their divorce Judgment and Decree." *Id.* at 165.

{¶ 5} The bankruptcy court concluded that "the state court Decree as to the division of the retirement fund constitute[d] a division of property and not alimony and support." *Id.* at 169. The court found that the weekly payments were dischargeable in bankruptcy, but stated that its decision should not be construed as otherwise interfering with the domestic relations court's division of marital property. The bankruptcy court also emphasized the domestic relations court's mandate prohibiting Lelak from withdrawing benefits without providing notice to Siddall. Finally, the bankruptcy court stated that "[t]he extent to which such funds are vested and the extent to which they may be so encumbered under Ohio law is not now an issue sub judice, and is a question of state law properly to be determined by the state court. In any event, the judgment by this court should not be deemed an alteration of or interference in the implementation of the division of the retirement benefits property as vested on the date of the state court Decree, when payable." *Id.* at 169.

{¶ 6} In 2016, Siddall discovered that Lelak had withdrawn monies from his retirement account, and she filed a motion to show cause seeking to hold Lelak in contempt for failing to provide her with notice prior to the withdrawals. A magistrate conducted a hearing on the matter and found Lelak in civil contempt. The magistrate awarded Siddall her share of the retirement benefits pursuant to the decree of divorce, plus growth thereon. The magistrate also awarded attorney fees to Siddall. The

magistrate sentenced Lelak to 30 days in jail but permitted him to purge the contempt and avoid the sentence by making payment to Siddall.  Lelak filed timely objections.

{¶ 7} In its decision sustaining Lelak's objections, the trial court concluded that the bankruptcy court's order had discharged not only the weekly payment obligation but also Lelak's obligation to pay Siddall $10,363 from his retirement benefits.  Thus, the trial court reversed the magistrate's finding of contempt as well as the award of $10,363, interest, and attorney fees.

{¶ 8} Siddall appealed, and we reversed the trial court's decision, concluding that it had incorrectly interpreted the bankruptcy court's decision.  We remanded for further proceedings, stating that, "[s]ince the trial court's assessment of the issues of contempt and attorney fees was based upon an incorrect interpretation of the bankruptcy court's decision and judgment, we conclude that it necessarily erred in its review of the magistrate's decision and Lelak's objections thereto."  *Lelak I*, 2d Dist. Montgomery No. 28243, 2019-Ohio-4807, ¶ 24.

{¶ 9} In its decision on remand, the trial court stated it had considered "[Lelak's] failure to provide [Siddall] with notice as * * * criminal contempt because it required a single act of [Lelak] to be performed at a single moment in time.  Punishment for his failure to do so is not coercive in nature, in that the time for compliance is long past and is not conducive to remedial punishment."  The trial court also concluded, however, that Siddall had failed to prove criminal contempt because she had failed to provide evidence that Lelak had a specific intent to disobey the decree.  The trial court also concluded that, even if Lelak's action constituted civil contempt, the evidence established the defense of impossibility of performance because Lelak had not known Siddall's new marital name or

her address and thus had no means of notifying her of the withdrawal.

{¶ 10} The trial court also stated it could not order Lelak to pay the amount owed because doing so would constitute an impermissible modification of the divorce decree, since the decree did not set forth an alternate method of payment of the pension benefits. Further, the court found the doctrine of laches operated to prevent it from crafting a method for such payment.

{¶ 11} In sum, the trial court declined to find Lelak in contempt and ruled Siddall was not entitled to payment of the pension benefits, any growth thereon, or attorney fees.

{¶ 12} Siddall has filed a timely appeal.

## II. Abuse of Discretion Analysis

{¶ 13} Siddall's first assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE CONTEMPT ORDERS AGAINST THE DEFENDANT.

{¶ 14} Siddall asserts the trial court erred when it failed to adopt the magistrate's decision finding Lelak in civil contempt of court.

{¶ 15} A trial court's ruling on a motion in a contempt proceeding will not be disturbed on appeal absent an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if it is not supported by any sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d

157, 161, 553 N.E.2d 597 (1990)

{¶ 16} Contempt of court is defined as a disregard of, or disobedience to, an order or command of judicial authority. *State v. Flinn*, 7 Ohio App.3d 294, 455 N.E.2d 377 (9th Dist.1982). "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.

{¶ 17} Contempt may be classified as civil or criminal, with the distinction between the two hinging on the character and purpose of the sanction imposed. *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 24 (2d Dist.). The punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant, i.e., conditional fines and prison sentences. *Dayton Women's Health Ctr. v. Enix*, 68 Ohio App.3d 579, 591, 589 N.E.2d 121 (2d Dist.1991). On the other hand, criminal contempt sanctions are punitive and designed to vindicate the authority of the court. *Id.* Civil contempt is characterized as against the party for whose benefit the order was made, while criminal contempt is described as offenses against the dignity or process of the court. *Chavez-Juarez* at ¶ 25.

{¶ 18} As described above, the trial court concluded that Lelak's actions were in the nature of criminal contempt, based on the finding that Lelak's failure to provide notice to Siddall was a "single act to be performed at a single moment in time" and that the time for compliance was "long past" and "not conducive to remedial punishment." We disagree with this analysis. The mere fact that Lelak's conduct consisted of a single act

was not dispositive of the type of contempt. Further, there was no support in the record for the trial court's finding that Lelak's conduct could not be corrected. We cannot discern any other basis in this record for the trial court's conclusion that Lelak had committed criminal contempt.

**{¶ 19}** Instead, we agree with the magistrate's finding that Lelak was guilty of civil contempt, for which a conditional sanction was appropriate.[2] This sanction permitted Lelak to purge his contempt by complying with the decree. The purpose of the sanction was clearly to benefit Siddall by coercing Lelak into compliance with his obligations under the decree.

**{¶ 20}** "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. The movant must establish this by clear and convincing evidence. *Id.*

**{¶ 21}** Once the movant establishes a prima facie case of contempt, the burden shifts to the nonmoving party to establish a defense by the preponderance of the evidence. *Ferguson v. Boron*, 2018-Ohio-69, 105 N.E.3d 424, ¶ 14 (7th Dist.), citing *Morford v. Morford*, 85 Ohio App.3d 50, 55, 619 N.E.2d 71 (4th Dist.1993). Impossibility to comply with a court order is a valid defense to an accusation of contempt" but "it is no defense if the accused brings the inability upon himself." *Goddard-Ebersole v. Ebersole*, 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 15, quoting *Neff v. Neff*, 2d Dist.

---

[2] "Alleged contempt of a divorce decree is a civil contempt[.]" *Guy v. Shorey*, 8th Dist. Cuyahoga No. 106923, 2019-Ohio-977, ¶ 3, citing *Ganelli v. Ganelli*, 8th Dist. Cuyahoga No. 72757, 1998 WL 308108, *3 (June 11, 1998).

Montgomery No. 11058, 1989 WL 13531 (Feb. 13, 1989).

{¶ 22} The unrebutted evidence in this case demonstrated the existence of a court order and Lelak's non-compliance with that order. In fact, Lelak admitted to his failure to comply. Thus, Siddall established a prima facie case of contempt.

{¶ 23} At the hearing, Lelak insisted his failure to comply had been based upon his belief that the bankruptcy court's order had eliminated his duties to Siddall regarding the pension account. However, with civil contempt, intent is irrelevant. The Ohio Supreme Court has held that a party acting innocently so that his conduct is not an intentional disregard of a court order cannot use that innocence as a defense to a charge of civil contempt. *Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815, at paragraph three of the syllabus. Thus, Lelak's stated belief that the bankruptcy court's order had discharged his duties under the divorce decree was of no relevance to the civil contempt issue.

{¶ 24} Even if intent were relevant, we note that the record supports a finding that Lelak was fully aware that the bankruptcy court neither discharged his duty to notify Siddall of a pension withdrawal nor discharged his duty to pay her the portion of the retirement benefits awarded to her by the divorce court. Specifically, during the hearing Siddall introduced a copy of Lelak's responses to interrogatories provided during discovery. In Interrogatory Number 3, Lelak was asked, "[p]lease state the total amount paid and the dates of such payments in satisfaction of your retirement division obligation to Plaintiff under the terms of the Final Decree and Judgment of Divorce filed January 31, '83." *See* Plaintiff's Exh. No. 6. Lelak's response stated:

Respondent does not remember any amounts paid to Plaintiff or the dates

thereof, as this was over 30 years ago. Further, when the Respondent filed

for bankruptcy, the bankruptcy court revised the conditions for payment to occur at the age of mandatory withdrawal. The total amount to be paid to Plaintiff was $10,363 per the Final Decree and Judgment of Divorce filed January 31, '83.

*Id.*

{¶ 25} Lelak asserts the defense of impossibility, claiming he had no knowledge of Siddall's address and thus could not provide her with notice of his withdrawal of retirement funds. The trial court agreed, noting that there was evidence Siddall moved several times between the 1983 divorce and the 1998 withdrawal of pension funds and that Siddall did not provide Lelak with notice of her new address or of her name change following her remarriage. The court also noted that, in 1989, Lelak sent a letter to his daughters, who were then residing with Siddall. The letter was returned to Lelak, marked as undeliverable with no forwarding address. Finally, the trial court noted that Lelak testified that, when his children were minors, and thus living with Siddall, there were time periods when he did not know where Siddall and his daughters were living. Based upon this evidence, which the trial court stated was unrebutted by Siddall, the court found Lelak had demonstrated impossibility of performance by clear and convincing evidence.

{¶ 26} The court's finding of impossibility was based upon evidence of events that occurred years before the withdrawal of the pension funds. The one letter Lelak referred to was sent nine years before the withdrawal. There was no evidence he made any further attempts to locate Siddall. Moreover, the daughters reached the age of majority at least eight years before the withdrawal occurred. Lelak did not assert a lack of contact with them in their adulthood. In other words, Lelak did not present evidence he would

have been unable to locate Siddall through their children at the time of the withdrawal. Also, he could have sought Siddall's last known address through the trial court.[3]  In short, the unrebutted evidence showed no attempt to notify Siddall of the withdrawal.  We conclude that, without evidence that Lelak attempted to contact Siddall when he withdrew the pension monies, his impossibility defense had to fail.  Thus, we disagree with the finding of the trial court and conclude that the record was devoid of competent, credible evidence to support a finding of impossibility.

{¶ 27} Because Lelak did not substantiate his claim that it was impossible to locate Siddall and did not show an inability to comply with the decree, we conclude the trial court erred and abused its discretion by not finding Lelak in civil contempt for his failure to provide Siddall with notice of his withdrawal of the pension funds.  Accordingly, the first assignment of error is sustained.

### III.     Laches Analysis

{¶ 28} The second assignment of error asserted by Siddall states:

THE TRIAL COURT ABUSED ITS DISCRETION IN APPLYING THE DOCTRINE OF LACHES TO THIS CASE AND BY HOLDING THAT THERE IS NO OTHER WAY PLAINTIFF CAN OBTAIN HER SHARE OF THE DEFENDANT'S RETIREMENT AND THAT EVEN IF THE PLAINTIFF FILED A [CIV.R.] 60(B) MOTION IT WOULD BE DENIED.

---

[3] The record shows Siddall moved into her current residence in 1989.  On this record, it appears that Siddall would have continued to receive child support from Lelak for the parties' youngest child at the time of, and shortly after, the move.  Thus, Siddall's address would have been known to the trial court or at least ascertainable through the child support payment system.

{¶ 29} Siddall raises two issues in this assignment of error. First, she contends that the trial court erred in concluding her claims were barred by the doctrine of laches. Second, she asserts the trial court erred in concluding her claim would also fail under the provisions of Civ.R. 60(B).

{¶ 30} We begin by noting that Siddall did not file her claim under the provisions of Civ.R. 60(B). Therefore, the trial court's Civ.R. 60(B) discussion was dicta and advisory, and we need not address any claimed error related to Civ.R. 60(B).

{¶ 31} We next address the trial court's finding that Siddall's claim was barred by the doctrine of laches. Laches is an equitable defense that bars an action as a result of an unexcused delay in bringing the action that prejudices the defendant. *Atwater v. King*, 2d Dist. Greene No. 2002-CA-45, 2003-Ohio-53, ¶ 19. The elements of a laches defense are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." (Citation omitted.) *Id.* The application of the defense of laches is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Thomas v. Thomas*, 10th Dist. Franklin No. 03AP-1106, 2004-Ohio-2136, ¶ 14.

{¶ 32} In this case, the parties divorced in January 1983. Lelak filed his bankruptcy petition in June 1983. At that time, he had made one payment of $50 to Siddall. In 1998, Lelak withdrew $22,298.45 from the pension account and rolled the remaining amount of the pension, $158,736, from the state teacher's retirement system into a Fidelity retirement account. At the hearing before the magistrate, Lelak testified the Fidelity pension account had been depleted. However, on this record, the only

additional withdrawals shown occurred in 2011, when Lelak withdrew $36,731, and in 2012, when he withdrew $10,895.

{¶ 33} As stated by the Ohio Supreme Court, "delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting [the] claim." *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus. *See also Garrison v. Garrison*, 2d Dist. Montgomery No. 10256, 1987 WL 12223, *1 (June 5, 1987). "The mere inconvenience of having to meet an existing obligation imposed * * * by an order or judgment of a court of record at a time later than that specified in such * * * order cannot be called material prejudice." *Smith* at 457. Thus, Lelak's inconvenience at having to satisfy his court-ordered obligation at this admittedly late date cannot be considered materially prejudicial. As such, Lelak's laches defense was without merit, and the trial court's contrary conclusion constituted an abuse of discretion.

{¶ 34} The second assignment of error is sustained.

## IV. Growth Analysis

{¶ 35} Siddall's third assignment of error provides as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ORDERING THE DEFENDANT TO PAY GROWTH ON PLAINTIFF'S SHARE OF THE DEFENDANT'S RETIREMENT

{¶ 36} Siddall asserts that the trial court erred in denying her request for an award reflecting the additional growth in value of her portion of the pension benefits. We agree

that Siddall was entitled to such relief, but we do not accept her proposed calculation of the amount due.

{¶ 37} Siddall presented an accountant's expert testimony that if the $10,363 had been invested conservatively in the stock market, its value would have increased to approximately $90,000. The magistrate accepted this testimony, but the trial court, given its conclusion in regard to contempt, did not address on this issue. We reject Siddall's suggested remedy. Instead, we conclude that, in the absence of decree language or a post-decree order to the contrary, Siddall's entitlement to growth on her share of the retirement account began on the date Lelak could have withdrawn funds from the retirement account without incurring a penalty. This date cannot be determined on this record, so it must be so determined on remand.

{¶ 38} The next issue is the appropriate method to calculate the growth to which Siddall was entitled. We reject the notion that Siddall was entitled to growth based upon stock market performance. We conclude, instead, that the appropriate method would be to award Siddall statutory interest under R.C. 1343.03 from the date Lelak could have withdrawn funds from the retirement account until the obligation is satisfied.

{¶ 39} The third assignment of error is sustained in part and overruled in part. Upon remand, the trial court shall determine the date Lelak was entitled to withdraw his pension benefits without penalty. The court shall then award Siddall statutory interest upon the sum of $10,313 from that date until such time as the decree is satisfied.[4]

---

[4] This sum represents the amount of $10,363 awarded in the decree less the $50 payment made by Lelak prior to his filing for bankruptcy.

## V.    Attorney Fees

**{¶ 40}** Siddall's fourth assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT DIRECTING THE DEFENDANT TO PAY PLAINTIFF'S ATTORNEY FEES BECAUSE THE PLAINTIFF PROVED BY CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT IS IN CONTEMPT FOR VIOLATING MULTIPLE COURT ORDERS.

**{¶ 41}** Siddall asserts she was entitled to an award of attorney fees related to the prosecution of the contempt motion.

**{¶ 42}** It is well settled that trial courts have "discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 85 (2d Dist.), quoting *State ex rel. Fraternal Order of Police Captain John C. Post Lodge No. 44 v. City of Dayton*, 49 Ohio St.2d 219, 229, 361 N.E.2d 428 (1977); *Passage v. Passage*, 2d Dist. Greene No. 2015-CA-36, 2016-Ohio-1097, ¶ 31.

**{¶ 43}** The trial court denied Siddall's request for attorney fees based upon its finding that Lelak was not in contempt of court.  However, given our disposition of Siddall's first assignment of error, we conclude the trial court erred in failing to consider the request for attorney fees, and, if warranted, the amount to be awarded.

**{¶ 44}** The fourth assignment of error is sustained.

## VI.    Conclusion

**{¶ 45}** The judgment of the trial court is reversed, and this matter is remanded for

further proceedings consistent with this opinion.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

James R. Kirkland
Dalma C. Grandjean
James D. Miller
Hon. Timothy D. Wood